UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

CIVIL CASE NO. 04-265-KKC

KENNETH WHITE                                                                                   PLAINTIFF

vs.                                         **OPINION AND ORDER**

MIKE HARRIS, ET AL.,                                                                       DEFENDANTS

\*\*\*\*\*\*\*

This matter is before the Court upon the "Motion to Dismiss, or in the Alternative for Summary Judgment (DE#25) by the defendants. Having carefully considered the entire record, including the Motion and Supporting Memorandum (DE#25, 26), Responses (DE#28, 35), and other related filings (DE#39, 40), the Court will grant the motion and dismiss this case without prejudice for the following reasons:

The prisoner plaintiff (a convicted murderer) has filed a rambling 59-page §1983 complaint against 25 named jail personnel and 20 unnamed defendants at the Pulaski County Jail. DE#1, ¶32. He seeks over $65,000,000.00 in damages for various incidents that allegedly occurred during his incarceration there, before he was transferred to the Kentucky State Reformatory. He also seeks various forms of injunctive relief and demands that all the jail employees "be prosecuted for Humane Rights, and Civil Rights Violations" against him. DE#1, ¶226-236.

White alleges that he was "forced to eat meals ...that fail to meet civilized standards of decency" (DE#1, p. 2), that his meals were "tampered with" (DE#1, p. 2; DE#2, p. 4, 8), that his name was put on his tray (DE#2, p. 4, 8), that he repeatedly found "foreign objects" in his food (DE#1, ¶46, 77, 82, 96, 131), that he was "denied the right to see the Jail doctor"

on various occasions (DE#1, ¶37, 58, 63), that his prescriptions for certain medications were discontinued or were not given to plaintiff in a timely fashion (DE#1, ¶¶44-45, 51-56, 104), that at times the doctor would not see him or would not write various prescriptions demanded by plaintiff (DE#1, ¶49), that he once got "ants in his ear" due to toothpaste on his bed rail (DE#1, ¶42), and was not given ear drops (see, e.g. DE#1, ¶38-39, 41-42). He also claims that a "pencil was used to keep the shower running...[and] blew out of the shower, hitting the Plaintiff in the eye" and that he was not treated for this (see, e.g., DE#1, ¶114, 210, 217, 223). Finally, White claims that he was not allowed to attend various religious services when he desired (see, e.g., DE#1, ¶37, 60, 120).

Plaintiff did not attach any documentation regarding exhaustion of any administrative remedies regarding these issues to his complaint, nor did he allege in his complaint any specific facts regarding any administrative proceedings and their outcome. The defendants filed a motion to dismiss on the basis that the prisoner had completely failed to satisfy the PLRA's statutory requirement of exhaustion of administrative remedies.

The Prison Litigation Reform Act ("PLRA"), P.L. 104-134, *codified as*, 42 U.S.C. §1997e(a) (1996) applies to prisoner cases, such as the present one, filed on or after April 26, 1996. See *White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997); *Wright v. Morris*, 111 F.3d 414 (6th Cir.), *cert. denied*, 118 S.Ct. 263 (1997). The PLRA specifically requires a plaintiff to exhaust his administrative remedies prior to suing over prison conditions and provides that:

> "No action shall be brought with respect to prison conditions
> under section 1983 of this title, or any other Federal law, by
> a prisoner confined in any jail, prison, or other correctional
> facility until such administrative remedies as are available

are exhausted." 42 U.S.C. §1997e(a).

Such statutory requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); and *see*, *Clayton v. U.S. Department of Justice*, 136 Fed. Appx. 840, 841 (6th Cir. 2005). Given that prisoners often attempt to "constitutionalize" petty complaints, and given that the correctional system is in a better position than courts to address and resolve matters of day-to-day prison management through administrative grievance procedures, "[t]he text of the Prison Litigation Reform Act itself reflects that the drafter's primary objective was to curb prison condition litigation." *Kincade v. Sparkman,* 117 F.3d 949, 951 (6th Cir. 1997).

The Sixth Circuit Court of Appeals has instructed lower courts that "a prisoner must plead his claims with specificity and show that they have been exhausted by attaching a copy of the applicable administrative dispositions to the complaint or, in the absence of written documentation, describe with specificity the administrative proceeding and its outcome." *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000), *cert. denied*, 531 U.S. 1040 (2000); *Boyd v. Corrections Corporation of America*, 380 F.3d 989 (6th Cir. 2004), *cert. denied*, 125 S.Ct. 1639 (2005); *Jones v. Bock*, 2005 WL 1400205 (6th Cir. (Mich.)). A complaint that fails to met such pleading requirements must be dismissed in its entirety. *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir.), *cert. denied*, 525 U.S. 833 (1998); *Knuckles El*, 215 F.3d at 642 (dismissing without prejudice after plaintiffs were given an opportunity to fulfill the requirements of *Brown* and failed to do so). White has not satisfied

3

either requirement. He has merely alleged that there was a "continuous ongoing problem with numerous complaints filed, no exact dates." His failure to satisfy the requirements of the PLRA requires dismissal without prejudice. See *Wright v. Morris*, 111 F.3d 414 (6th Cir.), *cert. denied*, 118 S.Ct. 263 (1997)("inmates cannot bypass the PLRA's administrative exhaustion requirements....inmates have both notice that exhaustion of state administrative remedies is required and reasonable opportunity to file complaints").

In an attempt to avoid dismissal, White has claimed that his failure to pursue administrative remedies should be excused because there are no "available" remedies, or alternatively, he was not advised about such remedies. White also inconsistently argues that he was "prevented" from pursuing grievance procedures because he was not given a grievance form.

The defendants responded with documents showing that the Pulaski County Jail *does* have administrative grievance procedures for complaints regarding prison conditions, that plaintiff *was* expressly advised of such available grievance procedures in writing as a matter of standard booking procedure, that plaintiff made various other written requests and complaints which were processed and promptly responded to in writing by jail personnel, and that plaintiff simply did not avail himself of available grievance procedures with respect to the claims presently before this Court. Despite being given the opportunity to substantiate his allegation that he was "prevented" from pursuing administrative remedies, White has failed to do so. Moreover, the record refutes White's allegations.

Although White claims he began keeping "detailed records" on July 10, 2002, his complaint is quite vague about the pursuit of any relevant grievances. He merely states that

he and his family "complained" about various incidents "with no corrective action taken". See, e.g., DE#1, ¶63-64, 71, 77, 86-94, 90-94, 97-102, 107-113, 138, 140-141, 186. These "complaints" were apparently oral. However, mere grumbling does not satisfy the statutory exhaustion requirement. The United States Supreme Court has pointed out that inmates "must *complete* a prison administrative process that could provide some sort of relief on the complaint stated". *Booth v. Churner*, 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). Even if administrative remedies do not provide for monetary damages, prisoners must still exhaust his available remedies prior to filing suit in order to comply with 42 U.S.C. §1997e(a). Id. at 121 S.Ct. 1822-25 .

To the extent White plaintiff claims that he was not "informed" of the right to file a grievance and/or was not told about grievance procedures (DE#1, ¶185, 187; DE#2, p. 8, 10; DE#28, 29), the record refutes his claim. The defendants have submitted documentation showing that plaintiff, upon his admittance to the jail, was informed in writing that administrative grievance procedures were available at the Pulaski County Jail. See DE#33, p. 2, 5. The defendants have submitted copies of the standard documents signed by White upon his initial booking. These forms demonstrate that White *was* advised in writing of the existence of written grievance procedures, including the specific address for mailing the written grievance. White personally acknowledged this by signing the form. See DE#30, attached exhibit. His allegation is also undermined by his own statement in his complaint that he asked for grievance forms at the jail. See DE#1, ¶145. Such statement is inconsistent with the plaintiff's allegation that he was "unaware" that grievance procedures were available.

White's subsequent allegation that his signature on such forms must have been "forged" is entirely self-serving. See DE#35, p. 4. The defendants have submitted affidavits of the jail personnel who personally witnessed White read and sign such documents. See DE#40, Exhibits. Moreover, it is readily apparent to the casual observer that White's signature on the booking forms appears identical in all respects to his signature on the complaint.[1] White states that he has a low-IQ, and this may have much to do with the fact that he simply does not remember signing the booking forms. In any event, "prison officials do not have to affirmatively provide information on how to proceed with individual claims." *Bey v. Johnson*, 407 F.3d 801, 809 (6th Cir. 2005); and see, *Brock v. Kenton County*, 2004 WL 603929, at *3 (6th Cir.).

The defendants also accurately point out that White *did* mail at least one grievance on a printed grievance form in January 2004, although he sent it to an incorrect address. See DE#35, p. 4. Hence, the record refutes the prisoner's conflicting allegations that he was "unaware" that he could file a grievance, or alternatively, was never given a printed grievance form. The record does not reflect that White ever pursued or completed any administrative appeals of any grievances. It is well-settled that inmates' exhaustion of administrative remedies includes administrative appeals. See, e.g., *Davie v. Wingard*, 958 F.Supp. 1244 (S.D. Ohio 1997). Moreover, the record reflects that plaintiff had access to writing utensils and paper, and made other written requests and complaints of jail staff. See

---

[1] It is noted that when White alleged that it was not his signature on the booking documents, he signed his name to his brief in a markedly different way from all his previous filings. To the extent White may have changed his signature to "illustrate" his point ,such attempt to mislead the Court is unavailing and will not prevent dismissal for failure to exhaust remedies.

6

DE#40, Exhibits.

The Sixth Circuit Court of Appeals pointed out in *Baxter v. Rose*, 305 F.3d 486, 488 (6th Cir. 2002) that the PLRA "permits federal courts to determine whether the claim can be decided on the merits without inefficiently expending judicial resources on evidentiary hearings and responsive pleadings". See also, *Clayton v. United States Dept. of Justice*, 2005 WL 1386379 (6th Cir. (Ky.)) (same). Similarly, in *Knuckles El*, 215 F.3d at 642, the Sixth Circuit Court of Appeals observed that:

> "District courts should not have to hold time-consuming evidentiary hearings in order simply to determine whether it should reach the merits or decline under the mandatory language of §1997e ("No action shall be brought...."). In the absence of particularized averments concerning exhaustion showing the nature of the administrative proceeding and its outcome, the action must be dismissed under §1997e. There are thousands of these cases in the Sixth Circuit district courts every year and approximately one thousand in the court of appeals."

However, as a matter of fairness to the pro se prisoner, and in order to accurately determine the exhaustion issue, this Court permitted additional factual development of the record to help resolve the plaintiff's claim that he was "prevented" from pursuing available administrative remedies. See DE#33, p. 6; and see, e.g., *Wyatt v. Leonard*, 193 F.3d 876, 878 (6th Cir. 1999)("district courts have some discretion in determining compliance with the statute"). The prisoner was given additional opportunity to specify what efforts he actually made to file grievances. For instance, as he claimed that his counsel and family had made "complaints" for him (see e.g., DE#1, p. 8), he was afforded the opportunity to substantiate such allegation and to provide additional facts or documentation.

Despite being given this additional opportunity, White has failed to show that

anyone filed a "complaint" on his behalf or that he was ever "prevented" from filing grievances. White has failed to adequately state specific facts about any alleged attempts to submit written grievances to the proper authority, or to have others do so for him. Although he was given leave to submit an affidavit of his former counsel indicating whether he had ever requested counsel to file a grievance for him, White did not provide such affidavit. He merely provided a letter from an investigator indicating that he was not White's counsel, and an affidavit from a fellow prisoner. White also produced two printed "medical requests" forms, which made non-medical demands of medical staff and which were not time-stamped (a time-stamp would indicate that such forms had actually been submitted to jail staff). DE#39.

To the extent defendant claims he couldn't file grievances because he didn't have a "printed form", see DE#35, p. 3-4, the defendants have submitted affidavits and documentary support showing that White did file various written requests, including a request for a "visiting form", a request for a "contact visit", a complaint about being charged for his inhaler, and a complaint that his cell was too cold. See DE#40, Exhibits. The record reflects that jail staff time-stamped them and responded appropriately in writing. This indicates that White had access to staff for making written complaints about prison conditions and that such written requests were processed and responded to promptly in writing.

White's allegation that he was "prevented" from making written grievances or complaints is unsubstantiated, and in fact, is belied by the record before the Court. The record indicates that plaintiff had access to writing materials and stamps and that he was

provided information regarding the availability of an administrative procedure for written grievances and where to mail them. Nothing in the record suggests that plaintiff needed any particular "form" to make a written grievance. In conclusion, despite being afforded the opportunity to substantiate his claims that administrative remedies were not "available" or that he was prevented from pursuing them, plaintiff has failed to do so. The record plainly reflects that White has not pursued administrative remedies with respect to the claims presently before this Court. He has failed to satisfy the PLRA's statutory exhaustion requirement, and his inconsistent arguments for an exception to such requirement are unsubstantiated and unavailing.

Accordingly, It is **ORDERED** that:

1. the "Motion to Dismiss" (DE#25) by the defendants is **GRANTED**; and

2. plaintiff's complaint is **DISMISSED** without prejudice for failure to exhaust administrative remedies.

This the 16th day of September, 2005.

**Signed By:**

*Karen K. Caldwell* KKC

**United States District Judge**